Matthias, J.
 

 Three questions are presented hy the record in this case: First, has a municipality power to require the owners of automobiles, used for private and not for commercial purposes, to pay a license fee as a prerequisite to the use of such motor vehicle on the streets of such municipality? Second, are the fees exacted by the ordinance in question license fees, or do they constitute an excise tax? Third, if they constitute an excise tax, are Ohio municipalities authorized to exact and collect the same?
 

 Counsel for the municipality claim authority is conferred to enact and enforce the provisions of such ordinance by Section 3632, General Code. That is one of the sections of the General Code containing the enumeration of the powers conferred upon municipal corporations, and for the exercise and enforcement of which council may provide by ordinance. The portion thereof necessary in the consideration of this case is as follows:
 

 “To regulate the use of carts, dráys, wagons,
 
 *61
 
 hackney coaches, omnibuses, automobiles, and every description of carriages kept for hire or livery stable purposes; to license and regulate the use of the streets by persons who use vehicles, or solicit or transact business thereon.”
 

 It is contended by plaintiffs in error that this provision authorizes the municipal council to license and regulate only vehicles which use the street for the purpose of soliciting or transacting business, and this contention is supported by the Court of Appeals of the First Appellate District in the case of
 
 Crane
 
 v.
 
 City of Middletown,
 
 4 Ohio App., 130, 21 Ohio Cir. Ct. R., (N. S.), 173, and it was with the judgment in that case that the Court of Appeals in the instant case found itself in conflict. In the determination of the question we find ourselves in accord with the decision of the Court of Appeals in the
 
 City of Middletown case.
 
 We are led to that conclusion, not only by reason of the language of Section 3632, General Code, in its present form, but also by the history of the legislation. The first part of the section was formerly embraced in Section 1692, Revised Statutes 1897, and conferred authority to regulate all vehicles kept for hire or livery stable purposes, but subsequently the section, then subdivision 9 of Section 1536-100, Revised Statutes, was amended by adding the following:
 

 “To license and regulate the use of the streets by persons who use vehicles, or solicit or transact business thereon.” Act Oct. 22, 1902, (96 Ohio Laws, p. 23).
 

 It is quite apparent that this amendment was made for the purpose of extending the power of
 
 *62
 
 regulation and including therein vehicles which were not described in the section as it previously existed. By its express provisions it now includes not only persons who solicit and transact business on the streets, but also persons who use vehicles on the streets.
 

 But does the ordinance in question provide for the payment of a license fee, or does it exact the payment of an excise tax? That there is a distinction must be conceded; that such distinction has sometimes been disregarded seems apparent. Licensing and regulating are an exercise of the police power, while the exaction of an excise tax is an exercise of the taxing power. This distinction was clearly made by Judge Ranney in the ease of
 
 Mays
 
 v.
 
 Cincinnati,
 
 1 Ohio St., 268, where he said (page 273):
 

 “A
 
 license may include a tax, or it may not. If the exaction goes no further than to cover the necessary expenses of issuing it, it does not; but, if it is made a means of supplying money for the public treasury, we agree with the court in
 
 State
 
 v.
 
 Roberts,
 
 11 Gill & Johns, 506, that it ‘is a tax is too palpable for discussion.’ ”
 

 In that ease it was held that when the sum demanded is used as a means of supplying the public treasury it constitutes a tax. Many decisions of other states might be cited wherein this same distinction between license fees and excise taxes is consistently recognized and applied. It would seem unnecessary to go further than the decision of this court in the case of
 
 Saviers
 
 v.
 
 Smith, Secy. of State,
 
 101 Ohio St., 132, 128 N. E., 269, and the more recent cases of
 
 Fisher Bros. Co.
 
 v.
 
 Brown,
 
 
 *63
 

 Secy. of State,
 
 111 Ohio St., 602, 146 N. E., 100, and
 
 Foltz Grocery & Baking Co.
 
 v.
 
 Brown, Secy. of State,
 
 111 Ohio St., 646, 146 N. E., 97.. The entire theory of the
 
 S<aviers case
 
 and the subsequent cases referred to, and the basis of the decision of this court in those cases, was that the act of the Legislature in question was one imposing an excise tax upon the privilege of operating motor vehicles, because the proceeds thereof were to be used for the purpose of the maintenance and repair of roads. In the opinion in the
 
 Saviers case,
 
 at pages 135 and 142 (128 N. E., 270, 272), it was said:
 

 “It is perfectly apparent that this statute is a tax or revenue measure. The taxes are raised for a specific object, namely, the maintenance and repair of the public roads. The tax is levied on the privilege of operating a motor vehicle on the public highways. The provisions in the law with reference to its administration, and with reference to regulation and registration of motor vehicles, are merely incidental police regulations which do not affect the main object intended. The law provides that all fees collected under the chapter shall be paid into the state treasury to the credit of the fund to be designated as a ‘state maintenance and repair fund.’ # * * As we have already shown, the law in question is a tax law. Its purpose is manifestly the production of revenue to be used for the purpose specifically set forth. If the law raised sufficient to pay only the expense of administering it, it would not be a tax at all. It would be in the nature of a license. Being a tax laid on a privilege for a specific purpose tc>
 
 *64
 
 be used for the maintenance and repair of the thing concerning which the privilege is granted, it is a valid tax unless unreasonable. The use of the entire proceeds, in aid of the specific privilege enjoyed by those who pay the tax, is an essential feature in determining its reasonableness.”
 

 The conclusion cannot be escaped that the whole purpose of the ordinance in question here was that of the collection of revenue. In the city of Cambridge there are about 2,000 automobiles and 400 motor trucks. Concededly but $400 of the $9,000 that would be raised would amply cover the expense of the issuance of such license, and, by the express terms of the ordinance itself, it is provided that all of said funds above that required for the issuance of such license, furnishing the tags, checks, etc., “shall be transferred to the service fund and be used for the cleaning, the maintenance and repair of the streets and avenues of the city of 'Cambridge, Ohio.” The power to license was undoubtedly conferred only as an incident to the power to regulate. The basis of the decision of the Court of Appeals, as stated in its opinion, is that the amount that will be produced by the exaction of the prescribed fee will not exceed the amount required to pay the expense of issuing licenses and the expense of keeping the streets clean and repairing the damage caused by the use of automobiles upon the streets.
 

 The provision, a part of Section 3675, G-eneral Code, that ‘ ‘ all moneys and receipts, in any municipal corporation, which are derived from the enforcement of any ordinance or law requiring the payment of a vehicle license fee, shall be credited
 
 *65
 
 and paid into a separate fund, which fund shall he known as the public service street repair fund,” does not serve to confer any power in addition to that conferred by the provisions of Section 3632, General Code, which does not authorize the exaction of any fee except as an incident to the power of regulation. There is no provision whatever in this ordinance regulating the use of such vehicles, nor in any wise regulating the traffic on the streets of the city of Cambridge, and no portion of the fund is appropriated to any such purpose. That it was enacted with the view of raising' revenues for the purpose of restoring the depleted funds of the municipality, and particularly the street cleaning and repair fund, is made perfectly clear and manifest from the ordinance itself. It seems impossible to escape the conclusion that it is not, nor was it intended to be, a regulatory measure, but that, by whatever name it may he called, it is in fact an excise tax imposed for the purpose of raising revenue. If it is not, then neither was the law under consideration in the
 
 Saviers case,
 
 the
 
 Fisher Bros. Co. case,
 
 and the
 
 Foltz Grocery Co. case, supra,
 
 one providing for a tax levy.
 

 In the case of
 
 Marmet
 
 v.
 
 State,
 
 45 Ohio St., 63, 12 N. E., 463, relied upon by counsel for defendants in error, not an ordinance but a law of the stale was under consideration, and it was upheld as a valid tax measure.
 

 The case of
 
 City of Terre Haute
 
 v.
 
 Kersey,
 
 159 Ind., 300, 64 N. E., 469, 95 Am. St. Rep., 298, also relied upon as supporting the contention of the defendants in error, involved not only the authority
 
 *66
 
 of the council of a municipality in the state of Indiana to license, hut also the authority to tax, and because thereof that court sustained the validity of an ordinance which admittedly was not adopted in the exercise of police power, but for the purpose of raising revenue, and held that the municipality was exercising a legitimate special taxing power expressly conferred upon it by the Legislature. It must be concluded that that is the power which the council of the city of Cambridge is seeking to exercise.
 

 We thus come to the question whether at this time municipalities of Ohio, whether governed by charter or otherwise, are authorized to levy an excise tax upon the owners of all motor vehicles, and thus raise a fund for the purpose of cleaning, repairing, or improving the streets of a municipality. In the case of
 
 State ex rel. Zielonka
 
 v.
 
 Carrel, Aud.,
 
 99 Ohio St., 220, 124 N. E., 134, this court held that a charter city could raise revenue for local purposes hy an occupational tax so long as the state did not levy such tax, and subsequently this court applied the limitations upon the exercise of such power even by charter cities, in the case of
 
 City of Cincinnati
 
 v.
 
 American Telephone & Telegraph Co.,
 
 112 Ohio St., 493, 147 N. E., 806, where it was specifically held in the syllabus that the power to levy such tax “does not extend to fields within such municipality which have already been occupied by the state.”
 

 Authority is conferred upon the General Assembly by Section 13, Article XVIII, of the Constitution, to limit the power of municipalities to levy taxes for any purpose, and, as held in the cases'
 
 *67
 
 above cited, that may be done either expressly, or by implication, by the exercise of such power by the state itself. At the time of the enactment of this ordinance there were in effect Section 6299
 
 &t seq.,
 
 General Code, which not only levied an excise tax upon the owners of motor vehicles for the maintenance and repair of public roads, highways, and streets, but provided that 50 per cent, of all the taxes collected are required to be returned to the municipality where they originated, to be used for the purpose of street repair. It is disclosed by the record- that the city of Cambridge receives about $11,000 from that source each year. It is to be observed that the Legislature not only levied this tax for the benefit of the state, but for the benefit of municipalities as well. No municipality has power to levy such a tax in addition to that levied by the state for similar purposes.
 

 Judgment reversed.
 

 Jones, Day, Kinkade and Robinson, JJ., concur.